J-A21034-23

2024 PA Super 53

| TRUST OF JOHN S. MIDDLETON | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: PATRICK J. RILEY | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1843 EDA 2022 |

Appeal from the Order Entered June 27, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2020-X0633

BEFORE: BENDER, P.J.E., LAZARUS, J., and NICHOLS, J.

OPINION BY BENDER, P.J.E.:                    **FILED MARCH 25, 2024**

Appellant, Patrick J. Riley ("Riley"), appeals from the order entered on June 27, 2022, in the Court of Common Pleas of Montgomery County Orphans' Court, granting an emergency petition to compel the trustee to make distributions to the sole current beneficiary of the Trust of John S. Middleton. After careful review, we vacate and remand for further proceedings.

John S. Middleton ("Settlor" or "Grantor") established an *inter vivos*, irrevocable trust under an agreement dated March 3, 2002 ("Trust Agreement"), and named Larry P. Laubach, Esquire ("Laubach"), as the initial trustee. Under the Trust Agreement, Settlor retained an annuity interest for two years. At the conclusion of the two-year period, the trust was divided into two equal trusts — one for the benefit of Settlor's son, John P. Middleton

("John"), and the other for the benefit of Settlor's daughter, Frances B. Middleton.[1]

On February 5, 2020, in accordance with the terms of the Trust Agreement, Laubach was removed from his position as trustee. On February 6, 2020, Settlor appointed Riley as the successor trustee. Later that same day, Riley, acting in his role as trustee, executed a document in which he purportedly appointed Bridgeford Trust Company, LLC ("Bridgeford"), of Pierre, South Dakota, as a co-trustee and concurrently changed the situs of the Trust — jointly with Bridgeford — from Montgomery County, Pennsylvania to South Dakota. *See* Appointment of Co-Trustee, Change of Administrative Situs, and Delegation to Co-Fiduciary as Agent, 2/6/20, at 1-5.

On February 14, 2020, John filed a petition seeking a declaratory judgment that the attempted trustee appointment and change of situs are void and invalid *ab initio* ("Declaratory Petition"), in which he relied heavily on the following relevant provisions of the Trust Agreement:

> **TWELFTH -- Administrative Powers:** Except as may be prohibited hereinabove or by the [Internal Revenue Code of 1986, as amended ("I.R.C.")] and the Treasury Regulations pertaining to qualified annuity interests, Trustee or Trustees shall have the following powers in addition to those otherwise provided herein or by law, to be exercised in Trustee's or Trustees' absolute discretion:
>
> …

---

[1] This matter pertains only to the trust created for the benefit of John, which is referred to herein as "the Trust."

15. To change the situs for administrative and accounting purposes of any trust created hereunder to any jurisdiction, without the necessity of court approval.

…

**FOURTEENTH -- <u>Situs of Trust</u>:** The situs of this trust shall be the Commonwealth of Pennsylvania, and all questions pertaining to the construction and validity of the provisions of this Agreement shall be governed by the law of that Commonwealth.

…

**SIXTEENTH -- <u>Trustees</u>:** In the event Larry P. Laubach (or any successor to him) becomes unable to serve or continue to serve, Grantor shall appoint a successor Trustee who is a "non-family member" as defined below. …

In addition, **at such time as a child or grandchild of Grantor for whom a trust has been established herein reaches thirty (30) years of age, such child or grandchild shall become a Co-Trustee of his or her respective trust.** Subject to the foregoing, upon a child or grandchild of Grantor reaching thirty (30) years of age, the Trustees then serving for the trust of such child or grandchild shall be limited to a four (4) year term with the first such four (4) year term beginning upon the child or grandchild's reaching thirty (30) years of age. Such four (4) year term shall be renewable in the absolute discretion of the child or grandchild for whom a trust is established.

Furthermore, **Trustees serving hereunder from time to time are authorized to appoint at any time, by unanimous action if more than one Trustee is then serving, additional Trustees.** Each such designation or appointment shall be made by written instrument other than a will, and may be revoked in writing at any time prior to its becoming effective.

A "non-family member Trustee" shall refer to a corporation or an individual who is neither a descendant of Grantor nor married to such a person, nor any person who is a "related or subordinate party" to Trustee as defined in I.R.C. Section 672(c). …

**Trustees designated or appointed pursuant to this Item SIXTEENTH shall qualify as such by attaching hereto a written acceptance of the office and thereupon shall undertake all of the obligations and powers assigned to "Trustees" hereunder.**

- 3 -

Trust Agreement, 3/3/03, at 20-21, 23, 26-29 (emphases added).

John averred that, in accordance with Item Sixteenth of the Trust Agreement, he became a co-trustee in 2014, when he turned 30 years of age, and that he properly accepted his appointment in writing. Declaratory Petition, 2/14/20, at ¶¶ 5(d), 5(f), 7. As such, John argued that Riley's unilateral appointment of Bridgeford as a co-trustee, as well as the purported change in situs of the Trust to South Dakota were void and invalid *ab initio*. ***Id.*** at ¶¶ 36, 44. ***See also id.*** at ¶ 34 (noting that "pursuant to Item SIXTEENTH of the Trust Agreement, in order to appoint additional co-trustees, if more than one trustee is serving, the appointment of additional trustees must be 'by unanimous action'"); *id.* at ¶ 35 (John's indicating that he did not consent to or join in the appointment of Bridgeford as co-trustee); *id.* at ¶ 37 (stating that Item TWELFTH ¶ 15 of the Trust Agreement grants the trustees the power to change the situs of the Trust for administrative and accounting purposes); *id.* at ¶ 38 ("Pursuant to 20 Pa.C.S. § 7763(a), '[c]o[-]trustees who do not reach a unanimous decision may act by majority decision.'"); *id.* at ¶ 42 ("John, as a co-trustee … was not consulted with and did not consent to or join in the change of situs of the Trust from Pennsylvania to South Dakota."); *id.* at ¶ 43 (asserting that Riley did not have the power to unilaterally change the situs of the Trust).

Riley filed an answer and new matter to John's Declaratory Petition, contesting John's assertion that he became a co-trustee in 2014. While Riley consented that John reached the age of 30 in 2014, he averred that at the

time of Bridgeford's appointment and the change in situs to South Dakota, John had **not** accepted the position of trustee in accordance with the terms of the Trust Agreement. Answer and New Matter, 10/2/20, at ¶¶ 6-7.[2] In fact, he stated that the only alleged "evidence" provided by John of his supposed acceptance of the position — namely, a January 11, 2018 redacted letter addressed to Laubach — merely reflected John's "'intent' at some unspecified time in the future to so accept such position, but not his then present acceptance of the duties and responsibilities of a co-trustee." *Id.* at ¶ 7. Hence, Riley argued that he was not obligated to seek John's joinder or consent to either appoint Bridgeford as a co-trustee or to change the situs of the Trust. *Id.* at ¶ 10. Additionally, Riley asserted that because the situs was

_____

[2] As Riley noted, 20 Pa.C.S. § 7761 provides, in relevant part, that a person designated as trustee accepts the trusteeship:

(1) By substantially complying with a method of acceptance provided in the Trust instrument; or

(2) If the Trust instrument does not provide a method or the method provided in the Trust instrument is expressly made exclusive, by accepting delivery of the Trust property, exercising powers or performing duties as a Trustee or by otherwise indicating acceptance of the Trusteeship….

Answer and New Matter at ¶ 59. *See also id.* at ¶ 61 (Riley's stating that trustees designated under Item Sixteenth of the Trust Agreement "shall qualify as such by attaching hereto a written acceptance of the office and thereupon shall undertake all of the obligations and powers assigned to 'Trustees' hereunder" (quoting Trust Agreement at 29)); *id.* at ¶ 60 (Riley's advancing that "at no time prior to February 6, 2020[,] did John comply with either the method of acceptance of the [t]rusteeship provided in the Trust [Agreement] or otherwise exercising [*sic*] any powers or perform any duties as Trustee that would indicate acceptance of the [t]rusteeship…").

properly moved to South Dakota, the Court of Common Pleas of Montgomery County, Pennsylvania, Orphans' Court Division lacks jurisdiction over the administration of the Trust. *Id.* at ¶¶ 25-26.[3]

Riley subsequently proceeded with filing a request for limited discovery against John and Laubach regarding John's purported acceptance of the office of co-trustee prior to February 2020. A status conference was held on February 1, 2021; however, no hearing date was scheduled on John's Declaratory Petition, nor did the court rule on Riley's discovery request at that time.

On May 19, 2022, while the Declaratory Petition was still pending and the question regarding the orphans' court's jurisdiction over the administration of the Trust remained unresolved, John filed an emergency petition seeking to compel Riley to make distributions from the Trust "to preserve seat licenses John owns for seats to the Los Angeles Lakers (the 'Lakers'), a professional basketball team in the National Basketball Association (the 'NBA')." John's Brief at 5.[4] Riley filed preliminary objections to the Emergency Petition, arguing that the orphans' court could not rule on the

_____

[3] We note that Settlor also filed an answer and new matter to John's Declaratory Petition, to which John filed preliminary objections. By order of court dated August 25, 2022, the orphans' court sustained John's preliminary objections on the grounds that "Settlor lacks standing to respond to the Petition." Order, 8/22/22, at 1. Settlor's answer and new matter was thereby stricken. *Id.* Settlor filed a timely appeal from that order at docket no. 2449 EDA 2022, which we address in a separate writing.

[4] John's petition seeking distributions from the Trust is referred to herein as the "Emergency Petition."

request for distributions without first deciding if it has jurisdiction. Riley's Brief at 10. ***See also*** Preliminary Objections, 5/24/22, at ¶¶ 1-7 (reminding the orphans' court that John's Declaratory Petition raises the question of which court has jurisdiction over administration of the Trust, which must be resolved before the court can undertake such oversight of the Trust and rule on John's request for "emergency" distributions).

While the Emergency Petition was still pending, John was notified by the Lakers' business office that his Lakers season seat licenses were "subject to immediate cancellation," unless two equal payments of $176,095.06 were received by the Lakers — the first by June 27, 2022, and the second by August 15, 2022. John's Brief at 9-10. Thus, on June 24, 2022, John filed a praecipe with the orphans' court to amend his proposed preliminary decree to the Emergency Petition in accordance with the cancellation notice received from the Lakers. ***Id.*** at 10. Without addressing Riley's preliminary objections or holding an evidentiary hearing on either the Emergency Petition or the underlying Declaratory Petition, the orphans' court entered an order on June 27, 2022, directing Riley to make the two payments necessary to avoid cancellation of John's seat licenses. ***Id.*** ***See*** Order ("Distribution Order"), 6/27/22, at 1-2.

Riley filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The orphans' court filed its Rule 1925(a) opinion on August 31, 2022, in which it opined that its June 27, 2022 order is not immediately appealable. ***See***

- 7 -

Orphans' Court Opinion ("OCO"), 8/31/22, at 1 ("This order is neither a final order under Pa.R.A.P. 341, nor a collateral order under Pa.R.A.P. 313."); ***id.*** at 2 (opining that the order appealed from is not an appealable orphans' court order under Pa.R.A.P. 342). Additionally, on October 7, 2022, John filed a motion to dismiss this appeal as moot pursuant to Pa.R.A.P. 1972(a)(4), noting that Riley had already made the distributions in accordance with the Distribution Order.[5]

Herein, Riley presents the following issues for our review:

1. Whether the orphans' court erred in rendering an adjudication of [John's] Emergency Petition … by exercising jurisdiction over the Trust and directing distributions from the Trust without first ruling on a prior pending petition concerning whether Pennsylvania has jurisdiction over the administration of the Trust.

2. Whether the orphans' court erred in rendering an adjudication of the Emergency Petition and directing distributions from the Trust without holding an evidentiary hearing as to the jurisdictional issue of whether … John … was a co-trustee of the Trust prior to February 6, 2020[,] whose consent was necessary to appoint another trustee and change the situs of the trust.

3. Whether the orphans' court erred in rendering an adjudication of the Emergency Petition and mandating distributions from the Trust without holding an evidentiary hearing to resolve numerous disputed issues of fact raised by the Emergency Petition.

4. Whether the orphans' court erred in rendering an adjudication of the Emergency Petition when there was a pending Petition for Leave to Conduct Oral and Written Discovery, seeking

_____

[5] By *per curiam* order dated October 7, 2022, the disposition of John's application to dismiss the appeal was deferred to the merits panel and is discussed further *infra*.

documents and other discovery directly relevant to the issue of whether the court had jurisdiction.

5. Whether the orphans' court erred in rendering an adjudication of the Emergency Petition directing distributions from the Trust in order "to preserve the status quo" without holding a hearing to allow the presentation of evidence to establish what the status quo was.

Riley's Brief at 6-7 (cleaned up).

Before we reach the merits of the issues raised by the appellant, we must first determine whether this appeal is properly before us. "The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Beltran v. Piersody*, 748 A.2d 715, 717 (Pa. Super. 2000). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." *Commonwealth v. Merced*, 265 A.3d 786, 789 (Pa. Super. 2021).

Our "jurisdiction is generally limited to appeals from final orders of courts of common pleas, unless a statute provides otherwise." *Williams v. Williams*, 385 A.2d 422, 422 (Pa. Super. 1978). As the record reveals that the issues regarding the validity of Bridgeport's appointment as a co-trustee as well as the change in situs of the Trust are still pending below, we agree with the orphans' court that its June 27, 2022 order directing Riley to make distributions from the Trust is not a final order, because it does not dispose of all claims and all parties. *See* Pa.R.A.P. 341(b). Nonetheless, we disagree with the orphans' court's position that the order is not appealable under Pa.R.A.P. 342. Pursuant to Rule 342, "[a]n appeal may be taken as of right from … [a]n order confirming an account, or authorizing or directing a

- 9 -

distribution from an estate or trust[.]" Pa.R.A.P. 342(a)(1). **See also id.** at Comment ("Orders falling within subdivisions (a)(1)-(7) no longer require the lower court to make a determination of finality."). Moreover, the failure to appeal an order that is immediately appealable under Rule 342(a) "shall constitute waiver of all objections to such order and such objections may not be raised in any subsequent appeal." Pa.R.A.P. 342(c).

Here, the order from which Riley appealed expressly states, in relevant part:

> 1. Pursuant to 20 Pa.C.S. § 7711, to preserve the status quo and to prevent the forfeiture of seat licenses worth in excess of $3,000,000, Patrick J. Riley is hereby ordered to make the following distributions to John P. Middleton from the above-captioned [T]rust[:]
>
> (a) $176,095.06 by 5:30 p.m. PDT on June 27, 2022; and
>
> (b) $176,095.06 by 5:30 p.m. PDT on August 15, 2022.
>
> 2. Nothing in this order shall limit Patrick J. Riley's ability or duty to exercise his discretion to make additional distributions to John P. Middleton for his education, medical care or support in reasonable comfort in addition to the amount set forth in this order.

Distribution Order at ¶¶ 1-2. There is no question that this is an order "directing a distribution from [a] … trust[.]" Pa.R.A.P. 342(a)(1). Consequently, the Distribution Order was immediately appealable as of right pursuant to Rule 342(a)(1).[6]

---

[6] We further observe that the Distribution Order constitutes a mandatory preliminary injunction. **See** 15 Standard Pennsylvania Practice 2d § 83:9 ("Mandatory preliminary injunctions command positive acts on part of one

*(Footnote Continued Next Page)*

We now turn to John's motion to dismiss this appeal on the grounds of mootness. John avers that Riley has fully complied with the Distribution Order by making both of the payments as directed by the orphans' court, and that those distributions "cannot be undone." Motion to Dismiss, 10/7/22, at ¶¶ 4, 5, 18, 26. He further asserts that "[w]hen a party complies with a decree from which it has appealed, the party's appeal from that decree is moot." *Id.* at ¶ 19 (citing *Easton Theatres, Inc. v. Wells Fargo Land and Mort. Co., Inc.*, 449 A.2d 1372 (Pa. 1982)). *See also id.* at ¶ 23 ("When, as here, 'the terms of the order … on appeal have been fully executed and there remains no power to grant the relief sought,' the appeal should be dismissed as moot." (quoting *Graziano Constr. Co., Inc. v. Lee*, 444 A.2d 1190, 1194 (Pa. Super. 1982)). As it is well established that this Court "cannot enter judgments or decrees to which effect cannot be given," *id.* at ¶ 25 (quoting *Graziano*, 444 A.2d at 1193), John requests that we dismiss the instant appeal as moot. *Id.* at 8.

In response, Riley advances that the issue on appeal is **not** the distributions made in accordance with the Distribution Order but, rather, "Riley's right to an evidentiary hearing on jurisdiction and his right to an evidentiary hearing [as to the status quo] before a mandatory injunction is entered." Response to Motion to Dismiss, 10/12/22, at 1-2. He argues that

_____

party to maintain the status quo between the parties."). Thus, we would also deem the Distribution Order an interlocutory appeal as of right. *See* Pa.R.A.P. 311(a)(4) (permitting an interlocutory appeal as of right from an order granting injunctive relief).

"[t]he order appealed from must be vacated, not to claw back the payments made to the Lakers, but so as to undo the premature exercise of jurisdiction by the orphans' court." *Id.* at 2 (unnecessary capitalization omitted).[7] ***See also id.*** at 10 ¶ 17 (stating that the orphans' court's granting of John's Emergency Petition "was an exercise of jurisdiction over the Trust without first adjudicating the issue of jurisdiction which had been pending before the [c]ourt since February 14, 2020"). Moreover, Riley asserts that the orphans' court "granted the Emergency Petition expressly to preserve the status quo while totally unaware of the actual status quo … because it never held a hearing on [John's] Emergency Petition…." *Id.*

This Court has explained the doctrine of mootness as follows:

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

_____

[7] While Riley admits that he made both the required distributions, he avers that he made these payments — **not** pursuant to the Distribution Order — but, rather, pursuant to an agreement that he reached with John prior to the issuance of the court's order and to fulfill his fiduciary duties to the Trust. Response to Motion to Dismiss at ¶¶ 3-4. In fact, Riley indicates that the first payment "had already been made before the [Distribution] Order was issued." *Id.* at ¶ 3. "The making of the first payment gave rise to a fiduciary duty to make the second[,] because without the second payment, the first payment would have been an unnecessary waste of Trust resources because the seat license[s] would have been lost." *Id.* at ¶ 4.

***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (citations and quotation marks omitted). "It is impermissible for courts to render purely advisory opinions. In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court." ***First Union Nat. Bank v. F.A. Realty Investors Corp.***, 812 A.2d 719, 724 (Pa. Super. 2002) (citation omitted).

> Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

***In re D.A.***, 801 A.2d at 616 (citations omitted).

Instantly, John argues that this appeal is moot because "Riley has fully complied with the [Distribution] Order." Motion to Dismiss at ¶ 5. ***See also id.*** at ¶ 26 ("Here, Riley made the distributions from the Trust as directed by the [c]ourt, and those distributions cannot be undone."). He reasons that, "in determining whether an appeal is moot, this Court looks to whether the relief sought by the appellant can be granted[,]" and that we cannot enter a judgment or decree to which no effect can be given. ***Id.*** at ¶ 25 (citing ***Graziano***, 444 A.2d at 1193).

It is true that where "there remains no power to grant the relief sought," an appeal should be dismissed as moot. ***Graziano***, 444 A.2d at 1194. However, that is not the case here. As Riley points out, he is not asking that

the payments be "undone." *See* Response to Motion to Dismiss at 2, 12. To the contrary, he seeks the following relief on appeal:

> Based upon all of the foregoing, this Court should 1) vacate the [o]rphans' court['s] order dated June 27, 2022[,] so as to avoid any waivers of Riley's objections to a) the exercise of jurisdiction over this Trust in Pennsylvania and b) the entry of injunctive relief without a hearing; and 2) remand the matter to the [o]rphans' court with instructions a) to hold an evidentiary hearing on the [Declaratory] Petition, following discovery, and b) not to issue any further injunctive relief without: i) expediting [John's] production of the documents on which he bases his claims in the [Declaratory] Petition and which he claims demonstrate that jurisdiction lies here in Pennsylvania because he was allegedly a [t]rustee at the time of the change of situs; and ii) holding a hearing to determine the status quo, the potential of irreparable harm[,] and the need for emergency relief before a full evidentiary hearing can be held on the [Declaratory] Petition.

Riley's Brief at 45-46. Hence, Riley is essentially seeking our review of the orphans' court's exercise of jurisdiction over the Trust without first conducting an evidentiary hearing to determine whether it had jurisdiction over the administration of the Trust. Because the issue of the orphans' court's jurisdiction remains unresolved and such a determination is essential for the resolution of the parties' rights and the underlying matters, we cannot agree that this appeal is moot. *See F.A. Realty Investors Corp.*, 812 A.2d at 725 (concluding that despite the entry of a consent order and the appellant's payment in full of the judgment amount owed to the appellees, the appeal was not moot where the question of whether the trial court had jurisdiction to enter the consent order remained unresolved and could still impact the

respective legal rights and obligations of the parties).[8]  Thus, we will address

Riley's claims.[9]

We review the merits of Riley's claims mindful of the following: In an

appeal from an orphans' court's decision,

> [we] must determine whether the record is free from legal error
> and the court's factual findings are supported by the evidence.
> Because the [o]rphans' [c]ourt sits as the fact-finder, it
> determines the credibility of the witnesses and, on review, we will
> not reverse its credibility determinations absent an abuse of that
> discretion.  However, we are not constrained to give the same
> deference to any resulting legal conclusions.  Where the rules of
> law on which the court relied are palpably wrong or clearly
> inapplicable, we will reverse the court's decree.

***In re Vincent J. Fumo Irrevocable Children's Trust ex rel. Fumo***, 104

A.3d 535, 539 (Pa. Super. 2014) (citation omitted).  Moreover, to the extent

that the appellant's claims involve statutory interpretation and/or

interpretation of the Trust document, such issues present questions of law

---

[8] John's Motion to Dismiss this appeal as moot is hereby **DENIED**.

[9] On January 11, 2024, Riley filed an application under Pa.R.A.P. 2501(a), requesting that we take judicial notice of a subsequent appeal filed by John at docket number 3220 EDA 2023.  In his application, Riley indicates that John has purportedly filed numerous emergency requests for distributions from the Trust since his filing of the Emergency Petition at issue in the matter *sub judice*.  Application for Judicial Notice, 1/11/24, at ¶¶ 4-5.  John's appeal at 3220 EDA 2023 is allegedly from the orphans' court's denial of one of these additional emergency distribution requests.  ***Id.*** at ¶ 8.  Riley suggests that this subsequent appeal warrants judicial notice, "as it demonstrates that the issue on appeal here is 'likely to repeat itself,' thereby assuring that the within appeal is not moot."  ***Id.*** at ¶ 9.  ***See also id.*** at ¶ 3 (noting that a question which is likely to repeat itself is an exception to the mootness doctrine).  Due to our disposition in this case, it is unnecessary to take judicial notice of this appeal.  Hence, Riley's Application for Judicial Notice is hereby **DENIED**.

over which our standard of review is *de novo* and our scope of review is plenary. **See In re Jackson**, 174 A.3d 14, 29 (Pa. Super. 2017); **B.K.M. v. J.A.M.**, 50 A.3d 168, 172 (Pa. Super. 2012).

We begin by considering whether the Montgomery County Orphans' Court had jurisdiction over the Trust at the time it adjudicated John's Emergency Petition, as each of the questions before us is dependent on a determination of this issue. In accordance with the Trust Agreement, "the situs of this [T]rust shall be the Commonwealth of Pennsylvania, and all questions pertaining to the construction and validity of the provisions of this Agreement shall be governed by the law of that Commonwealth." Trust Agreement at 26. However, the trustee(s) shall have the power to "change the situs [of the Trust] for administrative and accounting purposes … to any jurisdiction, without the necessity of court approval." *Id.* at 23 ¶ 15. Thus, while the terms of the Trust are to be interpreted by Pennsylvania law, the situs where the Trust is administered can be changed by the trustee(s).

Essentially, Riley argues that the situs of the Trust was transferred from Pennsylvania to South Dakota on February 6, 2020; hence, the Trust shall now be administered in accordance with South Dakota law. According to John, however, he became a co-trustee in 2014. As such, John maintains that the purported transfer of the Trust situs to South Dakota was void and invalid *ab initio* and, therefore, the Trust is still governed by the law of this Commonwealth. To resolve this conflict of laws issue, we turn to Pennsylvania's choice-of-law rules. **See Melmark, Inc. v. Schutt By and**

*Through Schutt*, 206 A.3d 1096, 1104 (Pa. 2019) ("Courts conduct a choice-of-law analysis under the choice-of-law rules of the forum state.").

Pennsylvania has adopted the Restatement (Second) of Conflicts of Laws, which provides in relevant part:

> The administration of an *inter vivos* trust of interests in movables is governed as to matters which can be controlled by the terms of the trust
>
> > (a)    by the local law of the state designated by the settlor to govern the administration of the trust, or
> >
> > (b)    if there is no such designation, by the local law of the state to which the administration of the trust is most substantially related.

Restatement (Second) of Conflict of Laws § 272 (1971).  "Matters of administration" are defined as "those which relate to the management of the trust[,]" which include "matters relating to the duties owed by the trustee to the beneficiaries[;] … the powers of a trustee, such as … the exercise of discretionary powers, the requirement of unanimity of the trustees in the exercise of powers, and the survival of powers[;]  … the removal of the trustee and the appointment of successor trustee…." *Id.* at § 272, *Comment a*; *id.* at § 271, *Comment a*.

The Comments to Section 272 explain that "[t]he settlor of an *inter vivos* trust may designate in the trust instrument a state whose local law is to govern the administration of the trust." *Id.* at § 272, *Comment c*.  However, "[w]hen the settlor does not designate a state whose local law is to govern the administration of the trust, its administration will be governed by the local law

of the state to which the administration is most substantially related." ***Id.*** at

§ 272, *Comment d*. Moreover, *Comment e* to Section 272 states:

> If the actual place of administration is changed … because … in the exercise of a power of appointment a trustee is appointed whose place of business or domicil is in another state, the question arises whether thereafter the administration of the trust is governed by the local law of the other state. This depends on the terms of the trust, express or implied. Such a change of the applicable law may be expressly authorized by the terms of the trust, or it may be authorized by implication, such as when the trust instrument contains a power to appoint a trustee in another named state. A simple power to appoint a successor trustee may be construed to include a power to appoint a trust company or individual in another state. In such cases, the law governing the administration of the trust thereafter is the local law of the other state and not the local law of the state of original administration.
>
> On the other hand, the terms of the trust may show the [settlor's] intention that the trust is always to be administered under the local law to the original state. In such a case[,] the mere fact that … by the exercise of a power of appointment a … trustee is appointed who is domiciled in another state does not result in a change of the law applicable to the administration of the trust.

***Id.*** at § 272, *Comment e*.

Here, the terms of the Trust allow for the transfer of the Trust situs "to any jurisdiction[,]" Trust Agreement at 23 ¶ 15, and contain no language indicating that the Settlor intended for the Trust to always be administered under Pennsylvania law. Rather, the Trust Agreement merely states that "all questions **pertaining to the construction and validity of the provisions of this Agreement** shall be governed by the law of [the] Commonwealth[ of Pennsylvania]." ***Id.*** at 26 (emphasis added). The Trust Agreement is silent as to which state's law shall govern the **administration** of the Trust. Thus, **if** the situs of the Trust was in fact transferred to South Dakota, we would

likely determine that the laws of South Dakota would apply. ***See*** SDCL § 55-3-48 ("Unless the governing instrument or a court order expressly prohibits the change of the law of another jurisdiction to govern the administration of the trust, the laws of South Dakota shall govern the administration of a trust while the trust is administered in South Dakota."). Alternatively, if the transfer of situs was not valid and the situs remains in Pennsylvania, the laws of the Commonwealth would apply. ***See*** 20 Pa.C.S. § 722 ("When a Pennsylvania court has jurisdiction of any trust, … except as otherwise provided by law, the venue for all purposes shall be in the county where at the time being is the situs of the trust."); 20 Pa.C.S. § 711 (granting the orphans' court exclusive and mandatory jurisdiction over matters regarding the administration of *inter vivos* trusts, the distribution of personal property of *inter vivos* trusts, and the appointment and removal of a trust fiduciary).

Based on our review, whether the transfer of situs to South Dakota was valid is dependent on resolution of the question regarding whether John properly accepted the role as a co-trustee in accordance with the Trust Agreement. This is a matter of factual dispute between the parties, which must be resolved in the orphans' court. Accordingly, we vacate the June 27, 2022 order and remand for the orphans' court to conduct an evidentiary hearing and to determine whether it has jurisdiction over this matter.[10]

---

[10] Due to our disposition, we need not address Riley's claim that the orphans' court erred in directing distributions from the Trust without first holding an
*(Footnote Continued Next Page)*

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/25/2024

---

evidentiary hearing to determine the status quo. However, in the event that the orphans' court is deemed to have jurisdiction over the Trust, we note that "[a] court shall issue a preliminary … injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary … injunction without a hearing or without notice." Pa.R.Civ.P. 1531(a). **See also** Pa.O.C.R. 7.4 ("Upon petition, the court may issue a preliminary, special, or permanent injunction in accordance with the rules and procedures provided in Pa.R.Civ.P. 1531.").