J-A17007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| C.B. AND J.B. ON BEHALF OF MINOR CHILD A.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: C.B. AND J.B. | : | |
| | : | No. 3134 EDA 2023 |

Appeal from the Order Entered November 1, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2023-19199

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED MARCH 21, 2025**

C.B. ("Mother") and J.B. ("Father") (collectively, "Parents") appeal the order denying their petition to change the name of their minor child, A.B., born in November 2013. We affirm.

A.B.[1] is a transgender youth who has identified as male since 2015. In August of 2023, Parents filed a petition to change the child's name pursuant to 54 Pa.C.S. § 701(a.1), and due to their non-specific concerns for A.B.'s safety as a transgender child, Parents also sought to waive the publication requirements outlined in 54 Pa.C.S. § 701(a.1)(3)(iii). In addition, Parents appended to the name change petition verified statements from two of the child's treatment professionals: Linda Hawkins, Ph.D. and Cade Scheer, MSW,

_____

[1] The child's preferred name shares the identical initials. Parents' brief and Mother's testimony both utilized masculine pronouns when referring to A.B.

LSW. Collectively, the statements provided by the health care professionals confirmed A.B.'s gender dysphoria diagnosis and stated that the name change served the child's best interest.

During the ensuing evidentiary hearing, Mother confirmed that A.B. has identified as male "since he was two years old and could speak." N.T., 11/1/23, at 7. She also testified that A.B. is under medical supervision as part of the transition and confirmed her belief that the name change served A.B.'s best interest. *Id*. at 5-6. However, Parents did not introduce either of the statements provided by the health care professionals, and when the court inquired, "And does the child have the maturity to appreciate what is being requested[,]" Mother simply responded, "You can ask him." *Id*. at 7. Unfortunately, however, counsel never presented A.B. to address the court's query.

In addition, Mother noted the basis of her request to waive the publication requirement. *Id*. at 6. Specifically, she confirmed her concern that publishing the information to the public would place A.B. at the risk of harm from people who are generally prejudiced against transgender people. *Id*.

At the close of evidence, the trial court indicated that it would "hold this matter under advisement and review this case further." *Id*. at 7. On the same day, it entered separate orders denying without explanation the petition for name change and the concomitant motion to waive publication.

- 2 -

Thereafter, Parents filed motions for reconsideration raising, *inter alia*, several novel arguments that the trial court violated A.B.'s constitutional rights to equal protection in denying the name change petition and violated A.B.'s rights to equal protection, privacy, and free speech in denying the motion for publication. The trial court summarily denied both motions.

Parents timely filed a notice of appeal.[2] The trial court did not direct Parents to file a concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(b), but the court issued trial court opinions in accordance with Rule 1925(a).[3]

Parents present the following questions for our review, which we reorder for ease of disposition:

> 1. Did the trial court commit an error of law by creating an improper and higher standard of proof for A.B.'s name-change application than that required by statute, including, but not limited to requiring that the application must be supported by testimony of a "qualified medical physician"?
>
> 2. Did the trial court abuse its discretion by denying the Petition, and finding that the name change was not in A.B.'s best interests, where the evidence in the record clearly established that the name change was in the best interests of A.B., including through unrebutted Appellants' testimony, the verified statements

---

[2] Parents filed separate notices of appeal, but this Court dismissed as duplicative the appeal from the order denying the request to waive publication without prejudice to Parents' ability to assert any properly preserved issues in the instant appeal.

[3] The trial court filed separate opinions explaining its rationale in denying the name change petition and waiver motion, respectively. Unless otherwise noted, our citation to the "Trial Court Opinion" in the body of this memorandum relates to the court's analyses of the name change petition.

submitted by health care professionals caring for A.B., and the consent of both parents of A.B.?

3. Did the trial court abuse its discretion by denying Appellants' Motion to Waive the Publication Requirement pursuant to 54 Pa.[C.S.] § 701(a.1)(3)(iii) (the "Motion") where the unrebutted evidence amply supported the Motion, including that Appellants fear for the safety of A.B. if publication of the change were required?

4. Was the trial court's denial of Appellants' Petition for Change of Name (the "Petition") legally erroneous because it violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Equal Rights Amendment to the Pennsylvania Constitution, insofar as it denied A.B. the equal protection of laws by holding A.B. to an improper and higher standard of proof than other non-transgender children seeking a name change?

5. Was the trial court's denial of the Motion legally erroneous because it violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Equal Rights Amendment to the Pennsylvania Constitution by denying A.B. individually the equal protection of laws guaranteed by the U.S. and Pennsylvania Constitutions?

6. Was the trial court's denial of the Motion legally erroneous because it violated A.B.'s right to informational privacy inherent in the U.S. and Pennsylvania Constitutions, as well as the right to privacy under the U.S. Constitution?

7. Was the trial court's denial of the Motion legally erroneous because it violated A.B.'s right to free speech under both the U.S. and Pennsylvania Constitutions?

Parents' brief at 5-7.[4]

_____

[4] We note with disapproval that Parents' brief fails to adhere to the rules of appellate procedure insofar as the seven issues that Parents enumerate in the statement of questions involved do not align with the myriad interwoven sub-arguments they outlined in the argument section of their brief. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]").

- 4 -

"Our standard of review involving a petition for change of name, regardless of the age of the petitioner, is whether there was an abuse of discretion." **T.W. v. D.A.**, 127 A.3d 826, 827 (Pa.Super. 2015). "An abuse of discretion exists if the trial court has overridden or misapplied the law, or if the evidence is insufficient to sustain the order." **Id**.

In Pennsylvania, a name change requires the filing of "a petition in the court of common pleas of the county in which the individual resides." 54 Pa.C.S. § 701(a.1)(1).[5] The petition must include a statement of the intention

_____

[5] The statute provides as follows:

> **(a) General rule.--**Except as set forth in subsection (b), it shall be unlawful for any person to assume a name different from the name by which such person is and has been known, unless such change in name is made pursuant to proceedings in court in accordance with subsection (a.1).
>
> **(a.1) Procedure.—**
>
> (1) An individual must file a petition in the court of common pleas of the county in which the individual resides. If a petitioner is married, the petitioner's spouse may join as a party petitioner, in which event, upon compliance with the provisions of this subsection, the spouse shall also be entitled to the benefits of this subsection.
>
> (2) The petition must set forth all of the following:
>
> > (i) The intention to change the petitioner's name.
> > (ii) The reason for the name change.
> > (iii) The current residence of petitioner.
> > (iv) Any residence of the petitioner for the five years prior to the date of the petition.

*(Footnote Continued Next Page)*

_____

(v) If the petitioner requests the court proceed under paragraph (3)(iii).

(3) Upon filing of the petition, the court shall do all of the following:

(i) Set a date for a hearing on the petition. The hearing shall be held not less than one month nor more than three months after the petition is filed.

(ii) Except as provided in subparagraph (iii), by order, direct that notice be given of the filing of the petition and of the date set for the hearing on the petition and that the notice be treated as follows:

(A) Published in two newspapers of general circulation in the county where the petitioner resides or a county contiguous to that county. One of the publications may be in the official paper for the publication of legal notices in the county.

(B) Given to any nonpetitioning parent of a child whose name may be affected by the proceedings.

(iii) If the court finds that the notice required in subparagraph (ii) would jeopardize the safety of the person seeking the name change or his or her child or ward, the notice required shall be waived by order of the court. Upon granting the request to waive any notice requirement, the court shall seal the file. In all cases filed under this paragraph, whether or not the name change petition is granted, there shall be no public access to any court record of the name change petition, proceeding or order, unless the name change is granted but the file is not sealed. The records shall only be opened by order of the court in which the petition was granted based upon a showing of good cause or at the applicant's request.

(4) At the hearing, the following apply:

(i) Any person having lawful objection to the change of name may appear and be heard.

_(Footnote Continued Next Page)_

to change the petitioner's name, the reason for the name change, the current residence of petitioner, and any residence of the petitioner for the five years prior to the date of the petition. *Id*. at (a.1)(2)(i-v). The fact that A.B. is transgender is of no specific consequence. Indeed, in reviewing the denial of a transgender adult's name change petition, our High Court explained, "the name change statute and the procedures thereunder indicate a liberal policy regarding change of name requests . . . we see no reason to impose restrictions which the legislature has not." *Matter of McIntyre*, 715 A.2d 400, 403 (Pa. 1998). However, as we expound upon, *infra*, if the individual whose name will be changed is a minor child, regardless of gender identity,

---

(ii) The petitioner must present to the court all of the following:

(A) Proof of publication of the notice under paragraph (3)(ii) unless petitioner requested the court proceed under paragraph (3)(iii) and the court granted the request.

(B) An official search of the proper offices of the county where petitioner resides and of any other county where petitioner has resided within five years prior to filing the petition showing that there are no judgments, decrees of record or other similar matters against the petitioner. This clause may be satisfied by a certificate given by a corporation authorized by law to make the search under this clause.

(5) The court may enter a decree changing the name as petitioned if the court is satisfied after the hearing that there is no lawful objection to the granting of the petition.

54 Pa.C.S. § 701(a)

the court must also determine whether the change is in the child's best interest. ***In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Grimes-Palaia***, 609 A2d 158, 161 (Pa. 1992).

First, we observe that Parents' assertions that the trial court violated a variety of A.B.'s constitutional rights in denying the name-change petition and the motion to waive publication pursuant to 54 Pa.C.S. § 701(a.1)(3)(iii) are waived pursuant to Pa.R.A.P. 302(a), which prohibits review of issues that were not raised in the trial court. As outlined *infra*, Parents failed to level any constitutional objections to either the substantive aspect or publication component of the name change law based on their child's status as a transgender minor.

From the outset, Parents had notice of both their burden to establish that the name change served A.B.'s best interest and the publication requirements of § 701(a.1)(3)(iii). However, they neglected to contest either aspect of the statute, much less assert any of the current constitutional challenges, at the earliest opportunity before the trial court, *i.e.*, during the name-change hearing, or at least before the court denied their entreaties. Rather than satisfy Rule 302(a), Parents raised these issues for the first time in the respective motions for reconsideration, which the trial court summarily denied without addressing the merits of either freshly-minted claim. Accordingly, the issues are waived. ***See e.g.***, ***Commonwealth v. Armolt***, 294 A.3d 364, 378 (Pa. 2023) (stating, other than certain non-waivable

claims, constitutional challenges "are subject to ordinary preservation rules");

***Stange v. Janssen Pharm., Inc.***, 179 A.3d 45, 63 (Pa.Super. 2018) ("Even

if an issue was included in a subsequently filed motion for reconsideration,

issues raised in motions for reconsideration are beyond the jurisdiction of this

Court and thus may not be considered by this Court on appeal.") (cleaned up).

Having determined that the constitutional challenges are waived, we

turn to the merits of Parents' assertions that the trial court applied the

incorrect legal standard and that its best interest determination constituted

an abuse of discretion. In reference to the best-interest element of a minor's

name change, our Supreme Court explained:

> Specific guidelines are difficult to establish, for the circumstances
> in each case will be unique, as each child has individual physical,
> intellectual, moral, social and spiritual needs. However, general
> considerations should include the natural bonds between parent
> and child, the social stigma or respect afforded a particular name
> within the community, and, where the child is of sufficient age,
> whether the child intellectually and rationally understands the
> significance of changing his or her name.

***In re Change of Name of Zachary Thomas Andrew Grimes to Zachary***

***Thomas Grimes-Palaia***, 609 A2d at 161. (internal citation omitted).

The trial court provided the following statement of rationale for denying

A.B.'s name change petition.

> In the instant case, no medical or psychological testimony
> was introduced. There was no medical testimony or diagnoses of
> gender dysphoria introduced into evidence.[1] No expert testified,
> and no expert reports were introduced into evidence at the
> hearing concerning [A.B.'s] gender identity. [A.B.] did not testify
> as to any preference. Nor was any evidence presented to show
> that the [c]hild understood the significance of a name change.

- 9 -

The [c]ourt could not evaluate any expert witnesses because no expert testified at the [h]earing.

. . . .

[A.B.] is only nine years old. Since the [c]hild did not testify, there was no evidence presented to allow this court to determine whether [A.B.] understood the issues or whether [A.B.] understood the significance of a name change and there was no medical evidence of gender dysphoria. The court must consider and make its ruling based on what it finds to be the best interests of the child. It is this court's opinion that in this case, considering the age of the child and the lack of evidence presented as to the [c]hild's understanding of the issue, the best interests of the child require that the [p]etition for [c]hange of [n]ame be denied, along with the [m]otion for [r]econsideration of that [o]rder. The [p]etitioners simply did not meet their burden of proof.

_____

[1] Two reports of professional counselors were attached to the Petition. However, these witnesses did not appear in court to testify and their reports were not introduced into evidence. Neither of these reports were made by a qualified medical physician.

_____

Trial Court Opinion, 12/13/23, at 3-4.

Parents' first two issues relate to the trial court's conclusion that Parents did not satisfy their burden of establishing that the name change served A.B.'s best interest. While Parents frame their challenge as assailing the trial court's best-interest determination as unsupported by the record, their legal arguments reverberate with the waived equal protection claim, asserting that the trial court imposed an elevated standard of proof that is not imposed on "other non-transgender children seeking a name change." Parents' brief at 21. They present their argument thusly:

An unopposed petition, with both parents' consent, to change a child's first name from one traditionally female name to another

- 10 -

would have been granted without any insistence that a "qualified medical professional" testify about the bona fides of the family's decision. The trial court's decision to create a novel standard that selectively applies based on gender identity is unconstitutional and finds no basis in the applicable statute. . . . [T]he trial court abused its discretion when it denied the petition, because the denial was premised on a finding that the change was not in A.B.'s best interests, which was a clear factual error, as the record clearly established that the name change was in the best interests of A.B. and lacked any evidence to support the trial court's contrary finding.

*Id*. (unnecessary capitalization omitted).

Relying upon *Matter of McIntyre*, 715 A.2d at 402, a case that involved an adult name-change petitioner, Parents assert that name-change petitions "may be denied . . . [only] if the petitioner seeks a name change in order to defraud the public." In that case, our Supreme Court reversed the denial of a name change petition where a fifty-three-year-old petitioner was not seeking to avoid financial obligations or commit fraud. Reasoning that because "the name change statute and the procedures thereunder indicate a liberal policy regarding change of name requests," it held that the individual's gender identity "should not affect the disposition of [the] request." *Id*. at 403.

Ignoring both that A.B. is (now) an eleven year-old child and that binding authority required the trial court to determine whether the name change served the child's best interest, Parents argue that because A.B. is not seeking to avoid financial obligations or defraud the public, the fact "[t]hat A.B. is transgender should not affect the disposition of the [p]etition[.]" Parents' brief at 23. Similarly, referencing the trial court's statement that Parents failed to present evidence concerning the child's gender identity,

Parents further contend that the challenged evidence is irrelevant because "the statute does not impose any such requirements." *Id*. at 24. They assert,

> [t]he court's reliance on such extraneous factors is an attempt to "impose restrictions which the legislature has not," which is contrary to our Supreme Court's holding in ***McIntyre***. Indeed, the trial court's opinion suggests that it was "concerned" with A.B.'s gender identity, which is of no concern to the judiciary, especially not on a simple name-change application to which both parents consent. Where, as here, Appellants satisfy the requirements of the name-change statute, the trial court committed clear legal error in imposing its own legal standard—created from whole cloth and not grounded in the statute.

***Id***.

For the following reasons, we reject Parents' request to ignore well-ensconced precedent designed to ensure that the name-change serves a child's best interest. First, as noted *supra*, Parents never objected to the requirement to demonstrate that the name change was in their child's best interest. Instead, they pled facts in the name change petition to support a favorable best-interest determination and Mother specifically testified that she believed the name change served A.B.'s best interest. Thus, to the extent that Parents now assail this component of the name-change process, that issue is waived. ***See*** Rule 302(a), ***supra***.

Second, Parents' contention that they needed only satisfy the enumerated components of the statute is simply wrong. Our High Court stated unequivocally, "we can discern no rational basis for disregarding the great weight of authority, requiring a court to exercise discretion in the best interest

- 12 -

of a child, when reviewing a minor's petition for change of name." ***See In re Grimes***, 609 A.2d at 161. As outlined above, in reaching this best-interest determination, the trial court is specifically mandated to consider "general considerations" including "the social stigma . . . afforded a particular name within the community." ***Id***. Indeed, the Supreme Court explicitly tasked the trial courts with determining, "whether the child intellectually and rationally understands the significance of changing his or her name." ***Id***. Thus, while Parents are correct insofar as they argue there is no requirement that a petitioner present expert testimony regarding gender dysphoria or any other medical condition, to prevail, the petitioner must nevertheless establish that the proposed name change would serve the best interest of the minor. Here, the trial court did not require Parents to present medical evidence, rather, as we discuss *infra*, it simply noted the omission in highlighting the paucity of relevant best-interest evidence. Hence, we reject Parents' argument that the trial court imposed an elevated legal standard in considering A.B.'s gender identity as part of the best-interest determination and by observing that Parents neglected to adduce sufficient evidence in that regard.

Finally, the record supports the trial court's assessment of A.B.'s best interest. In somewhat conclusory fashion, Parents first assert that they satisfied their burden of establishing that the name change served A.B.'s best interest simply by producing Mother's evidence to that effect. They opine that having presented Mother's favorable testimony, "the inquiry should have ended there." Parents' brief at 30. We summarily reject this threshold

position because it ignores both the trial court's mandate to assess the child's best interest and its role as the ultimate arbiter of fact. **See In re Grimes**, 609 A.2d at 161 (requiring trial court to determine best interest of child when reviewing minor's petition for change of name).

As it relates to the measure of evidence supporting the court's determinations, Parents contend that the court's conclusions "are wholly unsupported by the record." Parents' brief at 31. In this vein, Parents first complain that the trial court erred in disregarding the verified statements that they attached to their petition, but neglected to introduce as evidence during the hearing. **Id**. They contend the trial court "erroneously state[d] that no medical testimony or diagnosis of gender dysphoria were introduced into evidence." **Id**. Calling this account "clear factual error," Parents emphasize that their "[p]etition included two verified statements by A.B.'s treating medical professionals . . . ." **Id**.

Critically, neither of the documents that form the underpinnings of Parents' position was presented to the trial court. Accordingly, the trial court did not accept either statement as evidence. Parents neither explain how, nor cite authority for the proposition that, a factfinder may consider a report attached to a pleading if neither the report nor the testimony of its author was presented at trial. Indeed, if the best-interest evidence is not introduced at trial, how can the court ensure its reliability in performing its duty as the ultimate arbiter of fact pursuant to **In re Grimes**? Stated simply, it cannot. While Mother testified that A.B. was being treated by "appropriate medical

supervision," she did not remark about the diagnoses, treatments, or prognoses and failed to mention the verified statements that Parents' current argument seeks to invoke. *Id*. at 5. Thus, Parents have not convinced us that the trial court abused its discretion in concluding that the record was bereft of treatment-based evidence for it to draw upon in determining whether the name-changed served A.B.'s best interest.

Parents also chastise the trial court for declining to interview A.B. prior to rendering its decision. This position is founded on the trial court's lack of response to Mother's flippant retort, "You can ask him" when the court inquired, "does the child have the maturity to appreciate what is being requested." *Id*. at 7. Rather than acknowledging their failure to present their child's testimony in support of the name change petition, Parents now characterize the court's disregard of Mother's response as declining to interview the child. They equate this case with *In re Grimes*, 609 A.2d at 162, where the Supreme Court admonished the trial court for refusing to interview a five year-old child, whom the High Court believed could help resolve the discrepancies between the testimony of the parents in a contested name change case. The court reasoned, "The child was available; the court declined to interview [him]. . . . [G]iven the discrepancies in what each parent stated was [the child's] desire in these proceedings, an interview with the child may have been helpful." *Id*. at 162. The pertinent circumstances of these two cases are not alike.

Instantly, there was no discrepancy to resolve. Mother was the only witness presented. She neglected to testify about A.B.'s maturity and rather than answer the trial court's inquiry about A.B.'s ability to understand the significance of the name change, Mother deflected it. The court accepted that reply and asked Parents' counsel if they had anything else to present. *See* N.T., 11/1/23 at 7. Counsel indicated that Father's testimony would simply corroborate Mother's and rested. *Id*. At no point during the proceeding did Parents present A.B. as a witness, request that the trial court conduct an interview, or object to the trial court rendering its decision without first hearing from the child. Parents' assertions of trial court error are without merit.

In their final challenge to the trial court's exercise of discretion in determining the best interest of A.B., Parents assert that the trial court disregarded two of the three above-mentioned factors outlined in *In re Grimes*, 609 A.2d at 161, concerning "the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name." Parents maintain that the trial court focused upon the child's age and ability to understand. Parents' brief at 32. Their cardinal concern is that the trial court neglected to consider whether the proposed change would strengthen the parental bonds or help A.B. avoid social stigma. *Id*. This claim suffers from the same critical weaknesses that derail their other assertions of

error; it is belied by the record. While Parents cite the legal arguments they presented in the memorandum of law in support of their petition, they do not, indeed cannot, reference any evidence of record to support either contention. Mother, the only witness to testify in support of the name change, failed to state that the name change would nurture the familial bonds or help A.B. avoid social stigma. Indeed, the record affords no basis to support this aspect of Parents' argument. The trial court considered the evidence actually presented at the hearing and concluded, "there was no evidence presented to allow this court to determine whether the [c]hild understood the issues or whether the [c]hild understood the significance of a name change[.]" Trial Court Opinion, 12/13/23, at 3. As the certified record supports the trial court's determination, we will not disturb it.

Having disposed of Parents' arguments concerning the trial court's denial of the name-change petition, we next address their related assertions of trial court error relative to the court's associated order denying their request to waive the publication requirement. However, because we have concluded that the trial court did not abuse its discretion in denying the name change petition, this issue is moot and any opinion on the merits of Parents' arguments would be purely advisory.

We have explained the application of the mootness doctrine thusly,

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion

of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) (*en banc*) (cleaned up). Furthermore, "[i]t is impermissible for courts to render purely advisory opinions. In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court." *Trust of John S. Middleton*, 313 A.3d 1079, (Pa.Super. 2024) *quoting* **First Union Nat. Bank v. F.A. Realty Investors Corp.**, A.2d 719, 724 (Pa.Super. 2002).

Here, our decision to affirm the trial court's denial of the name change petition necessarily renders moot the court's concomitant decision to deny the motion to waive publication pursuant 54 Pa.C.S. § 701(a.1)(3)(iii).

Furthermore, even if this issue was not moot, the claim would nevertheless fail. In denying the motion to waive notice, the trial court concluded that Parents neglected to present evidence that the notice would jeopardize A.B. *See* Trial Court Opinion (Waiver Motion), 12/13/23, at 2. The trial court reasoned that it "has handled numerous name change petitions filed by transgender individuals, including minors, who have routinely met the publication requirements of the state statute," but Parents simply did not satisfy their burden of proof. *Id*. at 2-3.

The certified record supports this conclusion. Parents neglected to adduce evidence of any specific threat to A.B.'s safety. Mother simply answered affirmatively when counsel inquired, "[a]re you concerned that publication would alert members of the general public who would be

- 18 -

prejudiced [against] or unstable regarding transgender people?" N.T., 11/1/23, at 6. Similarly, she answered "yes" when asked, "Are you concerned those people would attempt to harm your child?" Thus, notwithstanding Parents' protestation that the court abused its discretion in finding that they failed to satisfy the requirements for waiving publication, the record belies the claimed error.

For all the foregoing reasons, we affirm the order denying Parents' petition to change the name of their minor child.

Order affirmed.

Judge Sullivan joins this Memorandum.

Judge Nichols files a Concurring Statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025