J-S22034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN CARLSON AND REBECCA LOMBARD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1675 MDA 2024 |
| MICHELLE GRAZIANO, CHILDREN HOSPITAL OF PHILADELPHIA, SUSQUEHANNA COUNTY CHILDREN AND YOUTH SERVICES, UNKNOWN CHOP ADMINISTRATOR, AND UNKNOWN CHOP SOCIAL WORKER | : | |

Appeal from the Order Dated October 16, 2024
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s): 2024-0612-CP

BEFORE:  LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

CONCURRING MEMORANDUM BY STEVENS, P.J.E.:

**FILED FEBRUARY 06, 2026**

Procedurally, this matter formally commenced with Susquehanna County Children and Youth Services ("CYS") making an oral application for protective custody of Appellants' child in the juvenile court division, and the trial court orally granting the application on August 12, 2024. The next day, on August 13, 2024, CYS filed a written shelter care application, and Appellants filed a *pro se* emergency petition for special injunctive relief in the

---

[*] Former Justice specially assigned to the Superior Court.

civil division.[1] The trial court *sua sponte* consolidated the shelter care application and Appellants' petition for special injunctive relief. The court scheduled a hearing for August 14, 2024, to address both matters.

During the August 14, 2024, hearing, the witnesses' testimony belied the averments made in CYS's shelter care application. Consequently, CYS moved to withdraw its shelter care application. The trial court granted the motion and vacated the emergency protective custody order. Based on the testimony presented during the hearing, and the trial court's ruling vacating the emergency protective custody order, the trial court denied as moot Appellants' August 13, 2024, petition for special injunctive relief. Specifically, by order entered on August 15, 2024, the trial court held that, because the emergency protective custody order was vacated, the shelter care application was withdrawn, and full custody of the child had been restored to Appellants, Appellants' petition for special injunctive relief was moot.

There is no dispute that Appellants did not file a notice of appeal within thirty days from the August 15, 2024, order denying their petition for special injunctive relief. Rather, within ten days, on August 23, 2024, Appellants filed a *pro se* motion entitled "Motion for Reconsideration of Petitioners' Injunction

_____

[1] The shelter care application proceeded in the juvenile court division while Appellants' petitions were filed in the civil court division. The matters were consolidated for hearings before the same lower court judge. Thus, for ease of discussion, the juvenile court and the trial court are referred to as the "trial court."

for Special Relief and Supporting Memorandum." The Majority concludes that, since the trial court did not expressly grant reconsideration within the thirty-day appeal period, it did not toll the time for Appellants to file a notice of appeal to this Court relative to the August 15, 2024, order. **See** Majority Memorandum at *9. Consequently, the Majority concludes Appellants "missed the appeal window" by waiting for the trial court to dispose of the reconsideration motion on October 16, 2024. Majority Memorandum at *9.

While the Majority correctly holds that Appellants could have filed an appeal immediately as of right from the August 15, 2024, order, which denied as moot their petition for special injunctive relief, I respectfully disagree that they were required to do so. **See** Pa.R.A.P. 311(a)(4); **SBA Towers II LLC v. Wireless Holdings, LLC**, 231 A.3d 901 (Pa.Super. 2020) (*en banc*) (discussing the interplay between Pa.R.C.P. 227.1 and Pa.R.A.P. 311(a)(4)). Rather, since the trial court held a consolidated evidentiary hearing on August 14, 2024, and, based on the testimony presented, dismissed Appellants' petition for special injunctive relief as moot at the conclusion of the hearing, Appellants were not precluded from filing a timely post-trial motion. **See Wolk v. School District of Lower Merion**, 649 Pa. 604, 197 A.3d 730 (2018) (discussing the filing of post-trial motions in cases involving petitions for injunctive relief).

That is, after the trial court rendered its decision denying the injunction and resolving all issues following a hearing, Appellants, the aggrieved litigants,

were permitted to file timely post-trial motions. ***Id.*** Accordingly, Appellants'

"Motion for Reconsideration of Petitioners' Injunction for Special Relief and

Supporting Memorandum" was a timely filed post-trial motion. ***See*** Pa.R.C.P.

227.1. Consequently, Appellants' notice of appeal filed on November 12, 2024,

which was within thirty days of the trial court's October 16, 2024, order

denying the "Motion for Reconsideration of Petitioners' Injunction for Special

Relief and Supporting Memorandum," was timely filed. ***See*** Pa.R.A.P. 903(a)

(setting forth time limits for taking an appeal).

Turning to the issues raised in Appellants' brief, the *pro se* brief is not a

model of clarity. In any event, to the extent Appellants challenge CYS's ability

to seize custody of the child based solely upon an oral application and oral

order, the issue is meritless.[2]

The Pennsylvania Rules of Juvenile Court Procedure relevantly provide:

> **A. Application of order.** The application for a court order of protective custody may be orally made; however, the request shall be reduced to writing within twenty-four hours. The request shall set forth reasons for the need of protective custody.
>
> **B. Finding of court.**
>
> ***
>
> (3) The order may initially be oral, provided that it is reduced to writing within twenty-four hours or the next court business day.

---

[2] As it relates to the application of the mootness doctrine, "an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable." ***In re Duran***, 769 A.2d 497, 502 (Pa.Super. 2001) (citations omitted). However, mootness would not prevent review in this case because it meets at least one of the exceptions to the mootness doctrine. ***See In re D.A.***, 801 A.2d 614, 617 (Pa.Super. 2002) (*en banc*) (citations omitted).

Pa.R.J.C.P. 1210(A), (B)(3) (bold in original).

Accordingly, contrary to Appellants' assertion, there is authority for a trial court to issue an oral emergency protective custody order provided that it is reduced to writing within twenty-four hours, as occurred in the case *sub judice*.

Moreover, in their brief, Appellants question the standard to be applied by courts in ruling on oral emergency protective custody applications filed by CYS, as well as whether the appropriate standard was satisfied in this case. The Rules of Juvenile Court Procedure provide the following: "(1) A child may be taken into protective custody by court order when the court determines that removal of the child is necessary for the welfare and best interests of the child." Pa.R.J.C.P. 1210(B)(2).

Here, in its confirmation of oral order for emergency protective custody, the trial court referenced the needs, welfare, and best interests of the child. Based on the evidence provided to the trial court at that time, including the allegation Appellants were interfering with life-saving medical care for child, the trial court granted the oral application for emergency protective care under the appropriate standard.

As the Majority notes, thereafter, during the August 14, 2024, evidentiary hearing, it became apparent that the reports made to CYS, which formed the basis for CYS's oral application for protective custody of the child and the written shelter care application, were not supported by the evidence.

Thus, during the hearing, CYS moved to withdraw the shelter care application, and the trial court properly granted the motion, as well as vacated the emergency protective custody order. The Majority criticizes CYS's efforts in this case, concluding CYS's oral application and subsequent written applications were based on false or baseless information.

However, in my view, particularly with the exigency inherent in these types of matters, CYS (and more importantly the trial court) followed the mandates of the Child Protective Services Law ("CPSL") and the Pennsylvania Rules of Juvenile Court Procedure. *See Interest of C.B.*, 264 A.3d 761 (Pa.Super. 2021) (*en banc*) (discussing the purpose of the CPSL is mainly to work as a vehicle for reporting abuse and bringing quickly into play services, including court hearings, available through county protective service facilities for the care of the child). Certainly, there will be times when the evidence offered during the hearing will reveal reports are "unfounded;" however, the CPSL's preference is for "over-investigating unfounded reports as opposed to one of under-reporting founded allegations." *Commonwealth v. Coyne*, \_\_\_ A.3d. \_\_\_, 2025 WL 2619297, at \*12 (Pa.Super. 2025) (cleaned up).[3]

---

[3] I agree with the Majority that there is no merit to Appellants' claim that, since the original report of child abuse was "unfounded," CYS must be enjoined from conducting future investigations based on valid reports. Such a holding would be contrary to the purpose of the CPSL, which has the primary purpose of protecting children from abuse. *See Coyne*, 2025 WL 2619297, at \*11-12.

I do not fault CYS in this case and instead commend CYS for their concern about the health, safety, and best interests of a child. Once CYS was given notification about possible parental interference in necessary medical treatment of a child, CYS sought a hearing, an entirely appropriate course of action, *i.e.*, the purpose of the hearing was to determine the facts of the case.

As an appellate court, it is our responsibility to review the actions of the trial court, and it is the trial court's responsibility to analyze the actions of CYS, which it did, and did correctly, in this case.

Finally, Appellants suggest they suffered "irreparable" harm from the improper removal of the child from their custody for approximately forty-eight hours. They specifically ask this Court to render an "advisory opinion" clarifying the type of evidence suitable for the granting of an oral application for protective custody, as well as whether the Pennsylvania Rules of Juvenile Court Procedure, which permit oral applications and oral orders, are "fundamentally flawed." Appellants' Brief at 58-59.

However, since it is impermissible for this Court to render advisory opinions, I decline to do so. **See Trust of John S. Middleton**, 313 A.3d 1079 (Pa.Super. 2024) (holding it is impermissible for courts to render purely advisory opinions). Accordingly, while I agree with the Majority's affirming of the trial court's order, I disagree with portions of the Majority's analysis.